UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, A FOREIGN CORPORATION; <br><br> Plaintiff, <br><br> vs. <br><br> HAWAIIAN CANOE RACING ASSOCIATIONS, HAWAIIAN KAMALI'I INC., doing business as HAWAIIAN CANOE CLUB, KIHEI CANOE CLUB, MARK DAVID STEVENS, DOE SPOTTER, DOE DEFENDANTS, <br><br> Defendants. | CIV. NO. 18-00212 LEK-RLP |

**ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, FILED JULY 3, 2019; AND DENYING AS MOOT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, FILED MARCH 22, 2019**

Before the Court is Plaintiff/Counterclaim Defendant United States Fire Insurance Company's ("US Fire") Motion for Summary Judgment ("Motion"), filed on July 3, 2019. [Dkt. no. 97.] On August 23, 2019, Defendants/Counter Claimants/Cross-claim Defendants Hawaiian Canoe Racing Association ("HCRA"), Hawaiian Kamali`i, Inc., doing business as Hawaiian Canoe Club ("HCC"), and Kihei Canoe Club ("KCC" and collectively "Club Defendants") filed their memorandum in opposition, and Defendant/Cross Claimant Mark David Stevens ("Stevens") filed a joinder of simple agreement with the memorandum in opposition. [Dkt. nos. 109, 111.] US Fire filed

its reply on August 30, 2019. [Dkt. no. 113.] This matter came on for hearing on September 13, 2019.

On September 27, 2019, an entering order was issued informing the parties of the Court's rulings on the Motion. [Dkt. no. 121.] The instant Order supersedes that entering order. US Fire's Motion is hereby granted in part and denied in part. The Motion is granted insofar as the Court concludes that US Fire has no duty to defend and no duty to indemnify, and the Motion is denied as moot as to the issue of coverage for punitive damages. In light of the disposition of the instant Motion, US Fire's Motion for Summary Judgment, filed on March 22, 2019 ("3/22/19 Motion"), [dkt. no. 76,] is denied as moot.[1]

## BACKGROUND

US Fire filed its Complaint for Declaratory Judgment ("Complaint") on June 4, 2018, seeking a declaratory judgment that it does not have a duty to defend nor a duty to indemnify the Club Defendants, Stevens (collectively "Defendants"), and various Doe defendants, as to claims arising from a September 17, 2016 incident in which Faith Ann Kalei-Imaizumi ("Kalei-Imaizumi") was tragically injured. See Complaint at ¶¶

---

[1] The instant Order supersedes the prior rulings on the 3/22/19 Motion that were issued in a June 24, 2019 entering order. [Dkt. no. 96.]

4, 21-24 & pgs. 31-32.  Stevens filed his answer to the Complaint on July 6, 2018, and an amended answer on July 26, 2018.[2]  [Dkt. nos. 14, 20.]  The Club Defendants filed their answer to the Complaint on July 24, 2018.[3]  [Dkt. no. 17.]

US Fire filed its First Amended Complaint for Declaratory Judgment ("First Amended Complaint") on March 1, 2019.  [Dkt. no. 70.]  The Club Defendants filed their answer to the First Amended Complaint on March 7, 2019, and Stevens filed his answer on March 15, 2019.[4]  [Dkt. nos. 71, 74.]

## I.   <u>Underlying Action</u>

The underlying action, <u>Kalei-Imaizumi, et al. v. Stevens, et al.</u>, Civil No. 17-1-0474, was filed in state court on November 14, 2017 by Kalei-Imaizumi, her husband, and their children ("Underlying Plaintiffs") against Defendants and others ("Underlying Action").  [Concise statement of facts in supp. of Motion ("Motion CSOF"), filed 7/3/19 (dkt. no. 98), at ¶ 1;

---

[2] Stevens's amended answer includes a cross-claim against the Club Defendants and a third-party complaint.  [Dkt. nos. 20-1, 20-2.]  The proceedings as to the cross-claim were been severed and stayed, [dkt. no. 85,] and the third-party complaint was dismissed, [dkt. no. 87].

[3] The Club Defendants' answer included a counterclaim against US Fire.  [Dkt. no. 17-1.]

[4] The Club Defendants' answer to the First Amended Complaint also includes a counterclaim against US Fire, [dkt. no. 71-1,] but the Motion does not seek disposition of the counterclaim. Stevens's answer does not include a cross-claim.

Concise counterstatement of facts in supp. of mem. in opp.
("Opp. CSOF"), filed 8/23/19 (dkt. no. 110), at ¶ 1 (partially
disputing US Fire's ¶ 1 to note that two of the Doe defendants
in the Underlying Action were later identified); Motion CSOF,
Decl. of Wesley H.H. Ching ("Ching Decl."), Exh. A (Complaint in
the Underlying Action ("Underlying Complaint")).]

The parties agree that, on September 17, 2016, Kalei-
Imaizumi was a switch paddler for a team entered in the 2016
Pailolo Challenge Outrigger Canoe Race ("2016 Pailolo
Challenge"), a twenty-six-mile, annual outrigger canoe race from
Kapalua, Maui to Kaunakakai, Molokai.  The Underlying Plaintiffs
allege HCRA was a sponsor, host, and/or organizer of the 2016
Pailolo Challenge.  [Motion CSOF at ¶¶ 2-4; Opp. CSOF at ¶ 2
(partially disputing US Fire's ¶ 2 on other grounds), ¶¶ 3-4
(admitting US Fire's ¶¶ 3-4).]  Stevens owned and captained the
Ohana, a twenty-six-foot Twin Vee Weekender Motorboat, which was
to be an escort boat for the 2016 Pailolo Challenge.  [Motion
CSOF at ¶¶ 7-8; Opp. CSOF at ¶ 7 (partially disputing US Fire's
¶ 7 on other grounds), ¶ 8 (admitting US Fire's ¶ 8).]

The Underlying Plaintiffs allege the Ohana was to
escort the canoe team that Kalei-Imaizumi was a part of.  Kalei-
Imaizumi and the other members of the switch crew swam from the
shore to the Ohana.  After they were aboard the Ohana, Stevens's
hat blew into the water, and Kalei-Imaizumi re-entered the water

to retrieve it. Kalei-Imaizumi suffered serious injuries because she was struck by the propeller of one of the Ohana's outboard motors while she was attempting to re-board the Ohana. [Underlying Complaint at ¶¶ 23-26.] Counts VI through XII of the Underlying Complaint allege various claims against the Club Defendants, Stevens, "Doe Spotter," and other Doe defendants.[5]

Those claims are:

-a negligent failure to warn claim against Stevens ("Underlying Count VI");

-a claim that Stevens was negligent and/or grossly negligent in operating the Ohana, with a claim that the Club Defendants were negligent in failing to ensure there was a spotter on each escort vessel, in their staging of the race, in their failure to enforce the insurance requirement for escort vessels, and in other failures to ensure the safe operation of escort vessels and crew safety ("Underlying Count VII");

-a claim that the Club Defendants were negligent in how they staged the 2016 Pailolo Challenge ("Underlying Count VIII");

-a claim that the Club Defendants were negligent in failing to provide insurance ("Underlying Count IX");

-a negligent infliction of emotional distress claim against all of the defendants ("Underlying Count X"); and

-------

[5] "Doe Spotter" refers to the person who

> was on board the Ohana at the time of [Kalei-Imaizumi]'s injury in the capacity of a "spotter" tasked with the responsibility, among other things, of notifying the Captain whenever a swimmer was about to enter the water from the vessel, or to board the vessel from the water, or was in the water in the vicinity of the vessel.

[Underlying Complaint at ¶ 10.]

-a loss of consortium claim against all of the defendants
     ("Underlying Count XI").

[Id. at pgs. 20-29.]  The other counts in the Underlying

Complaint are alleged against parties that are not involved in

this coverage action.  See id. at pgs. 10-20.  The Underlying

Plaintiffs seek various forms of relief, including punitive

damages.  [Id. at pg. 29.]

      During his deposition in the Underlying Action,

Stevens acknowledged that he stated, in response to

interrogatories, that he was hired by non-party Catherine

Bellafiore ("Bellafiore") to operate an escort boat in the 2016

Pailolo Challenge.[6]  [Ching Decl., Exh. C (excerpts of trans. of

_____

      [6] The Underlying Plaintiffs moved to certify Bellafiore as
one of the Doe Defendants, and the state court granted that
motion on July 19, 2018.  [Opp. CSOF, Decl. of Bruce Wakuzawa
("Wakuzawa Decl."), Exh. B (Pltfs.' Pretrial Statement filed on
12/12/18 in the Underlying Action) at 4.]  The Underlying
Plaintiffs describe Bellafiore as "a member of Defendant KCC"
who:

            owned the canoe in which the team was to paddle;
            was principally involved in organizing the
            paddling team, including selecting and/or
            recruiting the other team members; approved the
            selection of Defendant Stevens to provide escort
            services during the race, and approved the _Ohana_
            as a safe and appropriate escort boat; and was
            responsible for ensuring that Defendant Stevens
            had the requisite insurance coverage to serve as
            an escort for the 2016 Pailolo Challenge.

[Id.]

1/18/19 Videotaped Depo. of Mark David Stevens in the Underlying

Action ("Stevens Depo.")) at 122-23.]  Stevens was also

questioned about a text message exchange between him and

Bellafiore.  She wrote: "Hi Mark. Cate Bellafiore from [KCC],

you are our escort boat for Pailolo.  Can you tell me about your

boat?  How long, any shade, cooler on board, swim ladder, etc.

Also please confirm your fee.  Thanks."  [Id. at 115.]  Stevens

responded: "Aloha Cate, it is 26 feet has some shade, cooler and

swim ladder between the motors can be put on when stopped.  I

was told 900 would be the fee."  [Id.]  US Fire therefore argues

the Ohana was rented by, loaned to, or chartered by KCC.

## II.  **The Marine Policy**

On the date of the 2016 Pailolo Challenge, HCRA was

insured under Marine Policy No. 830-101897-8, which US Fire

issued to HCRA for the policy period January 1, 2016 to

January 1, 2017 ("Marine Policy").  HCRA's Island Associations,

its Member Clubs, and their members, directors, and board

members are also insureds under the Marine Policy.  [Ching

Decl., Exh. D (Marine Policy) at 1.[7]]  The following provisions

of the Marine Policy are relevant to the instant Motion.

---

[7] The Marine Policy consists of multiple parts that are not
consecutively paginated.  All citations to the Marine Policy
refer to the page numbers assigned in the district court's
electronic case filing system.

**A.   <u>Coverage A Watercraft Exclusion</u>**

The Marine General Liability Coverage Part ("MGL Part"), Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability – states:

    1.   Insuring Agreement

        a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

[Marine Policy at 6.]  The exclusions to Coverage A's Insuring Agreement include:

    f.   Aircraft, Auto Or Watercraft

        "Bodily injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned or chartered to any insured.  Use includes operation and "loading or unloading".

        This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" . . . involved the ownership, maintenance, use or entrustment to others of any . . . watercraft that is owned or operated by or rented or loaned or chartered to an insured.

[Id. at 7-8, § 2.]  Exclusion 2.f to Coverage A will be referred to as "Watercraft Exclusion A."

There are several exceptions to Watercraft Exclusion A, the most relevant of which is where "watercraft liability coverage is provided by Coverage D of this Coverage Part, or any Marine Liability Endorsement attached to this coverage part."  [Id. at 8, § 2.f(3).]

## B. **Coverage D Watercraft Exclusion**

Coverage D governs marine liability, and its Insuring Agreement states:

> a.  We will pay those sums that you become legally obligated to pay as damages because of:
>
> . . . .
>
> (3)  "Bodily injury" and "property damage" caused by persons employed by you or performing services on your behalf while they are aboard a watercraft or in any waterway or in any port for the purpose of effecting repairs or other work entrusted to you under paragraph 1.a.(1) above, notwithstanding that such persons may be signed on as members of the crew of said watercraft.

[Id. at 12.]  The exclusions to Coverage D's Insuring Agreement include: "'Bodily injury' . . . arising out of the operation of any watercraft owned by, or chartered to, you, including but not limited to, collision liability, tower's liability or liabilities insured against under the customary forms of hull &

9

machinery or protection & indemnity policies." [Id. at 13, § 2.c.] Exclusion 2.c to Coverage D will be referred to as "Watercraft Exclusion D."

 **C.** **Marine Liability Endorsement – P&I Coverage**

 The Marine Policy has a Marine Liability Endorsement, which provides "Protection and Indemnity Coverage" ("P&I Endorsement"). [Id. at 32.] The P&I Endorsement's Insuring Agreement states:

> The Company agrees, subject to the limitations, exclusions, terms and conditions of the policy to which this Endorsement forms a part and as hereinafter provided, to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as owners or operators of the vessels named herein, as hereinafter set forth:
>
> (1) Liability for "bodily injury" to any person, excluding, however, unless otherwise agreed by endorsement hereon, liability under any compensation act to any employee of the insured, or in case of death to his beneficiaries or others.
>
>  . . . .
>
> (2) Liability for hospital, medical, or other expenses necessarily and reasonably incurred in respect of "bodily injury" to any person.
>
>  . . . .

[Id.] The P&I Endorsement also states:

> Coverage under this endorsement shall apply to vessels listed the Schedule below, and to vessels that the insured acquires, charters or borrows during the policy period, provided:

(a) The vessel(s) are not hired under a charter agreement or borrowed on any basis other than a "bareboat or demise charter." For the purposes of this endorsement, "bareboat or demise charter" means any arrangement in which one hires, rents or leases a watercraft without crew or provisions and is directly responsible for the management and operation of the watercraft;

(b) The vessel is of a similar size and type as the watercraft listed in the Schedule below;

(c) The insured notifies this Company within thirty (30) days of acquiring or chartering such vessels; and

(d) The insured pays any additional premium required by this Company.

[Id. at 34, § E.] The following page – titled "Schedule of Vessels Applying to this Endorsements" – lists only "Canoes," which are described as: "All canoes owned by Hawaiian Canoe Racing Associations and its Members Clubs and their Members and Directors & Board." [Id. at 35.]

**D.** **Marine Liability Endorsement – Charterer's Liability**

The Marine Policy also contains a Marine Liability Endorsement titled "Charterer's Liability" ("Charterer Endorsement"), which states:

This Company hereby agrees, subject to the limitations, exclusions, terms and conditions of the policy to which this Endorsement forms a part and as hereinafter provided, to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as a "charterer" for:

11

. . . .

          (ii) liabilities imposed upon you as such
               charterer by law for "bodily injury" . . . ;

          (iii) legal costs and/or fees or expenses of
                counsel occasioned by the defense of any
                claim against you for any liability or
                alleged liability covered by this policy,
                provided that such costs, fees and/or
                expenses are incurred with the prior written
                consent of this Company.

          For the purposes of this endorsement, "Charterer"
          means one who hires, rents or leases watercraft
          or space on watercraft for their exclusive and
          temporary use.

[Id. at 36, § 1(a).]  The Charterer Endorsement states: "The

coverage provided by this endorsement shall be applicable only

in respect to:  Description of watercraft insured: . . . ."

[Id. at 36, § 2.]  However, there is no description following

that provision.  [Id.]  The Charterer Endorsement also states:

          Notwithstanding anything contained herein to the
          contrary and in addition to the exclusions
          elsewhere in the policy this Endorsement shall
          not cover any liability:

          . . . .

          (x)  For "bodily injury" to passengers carried,
               or for loss or damage to their baggage or
               personal effects for which you may be
               directly or indirectly liable.

[Id. at 37, § 3.]

                              12

### E. **Punitive Damages Exclusion**

The Marine Policy's Common Policy Exclusions state, in relevant part:

> It is understood and agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.
>
> Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or the rmultiple [sic] damages in excess of compensatory damages.
>
> If suit is brought against any insured for a claim falling with coverage provided by this policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford defense of such action; however, the Company will have no obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

[Id. at 31, § 5.] This provision will be referred to as the "Punitive Damages Exclusion."

### DISCUSSION

In the instant Motion, US Fire asserts the claims against the insureds in Underlying Counts VI, VII, VIII, IX, X, and XI are not covered under the Marine Policy. US Fire urges this Court to grant the Motion and issue a declaratory judgment that US Fire owes neither a duty to defend nor a duty to indemnify for the claims in the Underlying Action.

# I.   Preliminary Matters

## A.   Issues of Fact

### 1.   KCC

At the outset, it is noted that US Fire does not dispute that KCC is a member club of one of HCRA's Island Associations.  See First Amended Complaint at ¶ 4 (alleging that, "[u]pon information and belief, KCC is a member club of the Maui County Hawaiian Canoe Association, which is an Island Association of HCRA").  Thus, US Fire does not dispute that KCC was an insured under the Marine Policy during the period relevant to this case.  See, e.g., Mem. in Supp. of Motion at 18 (arguing KCC is an insured).  The Club Defendants did not expressly admit that KCC is a member club of one of HCRA's Island Associations.  [Club Defs.' Answer to First Amended Complaint at ¶ 4 (admitting that KCC "was and is a Hawaii corporation with nonprofit status under Section 501(c)(3) of the Internal Revenue Code with its principal place of business in the State of Hawaii," but asserting that they "are unable to admit or deny" the remaining allegations in ¶ 4 of the First Amended Complaint).]  However, the Club Defendants have taken the position that they are all named insureds under the Marine Policy.  See, e.g., Mem. in Opp. at 1.  Thus, there are no genuine issues of material fact, and this Court finds KCC is an insured under the Marine Policy for purposes of the instant

Motion.  See Fed. R. Civ. P. 56(a) (stating a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

### 2.  **Bellafiore**

Bellafiore testified that she became a member of KCC in 2010.  See US Fire's suppl. concise statement of facts, filed 7/22/19 (dkt. no. 101), Decl. of Wesley H.H. Ching ("Ching Suppl. Decl."), Exh. F (excerpts of trans. of 1/23/19 Videotaped Depo. of Catherine "Cate" Coffin Bellafiore in the Underlying Action ("Bellafiore Depo.")) at 22; see also Wakuzawa Decl., Exh. E (excerpts of Bellafiore Depo.) at 76 (Bellafiore stated "I'm a member").  From 2015 through the date of her deposition, Bellafiore served as KCC's representative to the Maui County Hawaiian Canoe Association.  [Ching Suppl. Decl., Exh. F at 30-31.]  Bellafiore owned the canoe that Kalei-Imaizumi's team was to paddle in the 2016 Pailolo Challenge.  [Wakuzawa Decl., Exh. E at 60.]  Referring to KCC members, Bellafiore testified that "we all raced as Kihei Canoe Club and they paid the due – the registration fee and our coach organized the crew."  [Id. at 76.]

The Club Defendants argue there is a genuine issue of material fact regarding whether Bellafiore is an insured under the Marine Policy because: 1) US Fire has not named Bellafiore

15

as a defendant in this action; and 2) US Fire has presented no admissible evidence establishing that it is defending Bellafiore in the Underlying Action.  This argument is rejected because the plain language of the Marine Policy and Bellafiore's uncontradicted deposition testimony speak for themselves.  The Club Defendants have identified no controlling case law, nor is this Court aware of any, requiring an insurer to either name a potential insured as a defendant in the coverage action or defend the potential insured in the underlying action before a court can find that the potential insured is in fact an insured under the policy.  Moreover, US Fire admitted in its reply in support of the instant Motion that Bellafiore was an insured during the relevant period.  [Reply at 7.]  Even when the record is construed in the light most favorable to Defendants,[8] there is no admissible evidence in the record contradicting the admissible evidence that Bellafiore was a member of KCC.  Thus, there is no genuine dispute of fact, and this Court finds that, for purposes of the instant Motion, Bellafiore was a member of KCC and an insured under the Marine Policy during the relevant period.

---

[8] In ruling on a motion for summary judgment, the record is viewed in the light most favorable to the non-moving party and all inferences are drawn its favor.  <u>S.R. Nehad v. Browder</u>, 929 F.3d 1125, 1132 (9th Cir. 2019).

### 3. **Stevens**

There is admissible evidence in the record that
Bellafiore entered into an agreement with Stevens securing his
operation of the Ohana as an escort boat in the 2016 Pailolo
Challenge, and that he would receive $900.00.  See Ching Decl.,
Exh. C at 115; see also id. at 122-23 (Stevens acknowledged
during his deposition that, in response to a verified
interrogatory asking him to "identify the person and/or entity
that engaged your services as an escort boat owner, captain,
and/or operator for the 2016 Pailolo Challenge," he responded:
"This Defendant was hired by Catherine Bellafiore."); Stevens's
suppl. concise statement of material facts, filed 8/6/19 (dkt.
no. 103), Decl. of Kristi L. Arakaki ("Arakaki Suppl. Decl."),
Exh. A (Stevens's response to interrogs. in Progressive Cas.
Ins. Co. v. Stevens, et al., CV 18-00343 JAO-KJM) at Response to
Interrog. No. 4 (Stevens stated he was "contacted less than a
week before the crossing by Catherine Bellafiore to work out the
details and secure [his] participation as the escort boat for
her canoe.").  In Progressive, Stevens characterized himself as
"a volunteer" who "was not 'hired' or 'retained.'"  [Arakaki
Suppl. Decl., Exh. A at Response to Interrog. No. 4.]  Stevens
gave similar testimony in the Underlying Action.  See Club
Defs.' Suppl. Concise Counterstatement of Material Facts ("Club
Defs.' Suppl. CSOF"), filed 8/6/19 (dkt. no. 105), Decl. of

17

Bruce Wakuzawa ("Wakuzawa Suppl. Decl."), Exh. 2 (excerpt of Stevens Depo.) at 90 (Stevens explained to his insurance company that his participation in the 2016 Pailolo Challenge was akin to "a public service"), 95 (denying that he was "engaging in a commercial activity" during the 2016 Pailolo Challenge).

Stevens's characterizations are disregarded because they are self-serving and are not supported by the admissible evidence in the record. Cf. Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) (stating that, in ruling on a motion for summary judgment, "[t]he district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence" (citations omitted)). Similarly, the Court also rejects the Club Defendants' argument that Stevens was not hired because he ultimately did not accept any money associated with the 2016 Pailolo Challenge. See Wakuzawa Suppl. Decl., Exh. 2 (excerpt of Stevens Depo.) at 89-90, 95. The Club Defendants cite no legal authority, nor is this Court aware of any, supporting their proposition that Stevens was never hired because, after the 2016 Pailolo Challenge, he refused to accept the payment he and Bellafiore agreed upon.

The Club Defendants argue that, even if the agreement regarding the Ohana's use in the 2016 Pailolo Challenge constituted a hiring, there are genuine issues of material fact

as to: whether Stevens or the Ohana was hired; and whether
Bellafiore or KCC hired Stevens/the Ohana.  Both arguments are
rejected.  There are no genuine disputes of fact as to these
issues, and the undisputed evidence in the record establishes
that: Stevens was hired to operate the Ohana as an escort boat
for Bellafiore's canoe, which was to be used by a KCC team in
the event;[9] and Bellafiore hired Stevens on behalf of KCC.  Even
if there is a genuine dispute of fact as to whether Bellafiore
or KCC, acting through Bellafiore, hired Stevens, the dispute
would not be material because both KCC and Bellafiore are
insureds under the Marine Policy.  See Eat Right Foods Ltd. v.
Whole Foods Mkt., Inc., 880 F.3d 1109, 1118 (9th Cir. 2018) ("A
material fact is one 'that might affect the outcome of the suit
under the governing law.'" (quoting Anderson v. Liberty Lobby
Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986))).  This Court
therefore finds that, for purposes of the instant Motion, an
insured hired Stevens to operate the Ohana as an escort boat for
the 2016 Pailolo Challenge.

B.    **Applicable Law**

Marine insurance policies are governed by federal
admiralty law, but state insurance law applies where: 1) federal

---

[9] There is no admissible evidence in the record suggesting
that Stevens could have escorted the canoe without the Ohana.

admiralty law has no established rule addressing the issue; and 2) there is no need for nationwide uniformity as to that issue. Galilea, LLC v. AGCS Marine Ins. Co., 879 F.3d 1052, 1057-58 (9th Cir. 2018) (some citations omitted) (discussing Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313, 316, 75 S. Ct. 368, 99 L. Ed. 337 (1955)). The Ninth Circuit has also stated:

> Wilburn Boat itself provides limited direction on how we are to determine whether a rule is "judicially established." . . . In the Ninth Circuit, we require that the rule be sufficiently longstanding and accepted within admiralty law that it can be said to be "established." Putting a slightly different spin on Wilburn Boat, the Fifth Circuit requires an admiralty rule be "entrenched federal precedent." See Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 886 (5th Cir. 1991). . . .

Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc., 518 F.3d 645, 650 (9th Cir. 2008). In Galilea, the Ninth Circuit also stated:

> "[W]here the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice," Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1296-97 (9th Cir. 1997), absent, as relevant here, "a state which has a materially greater interest than the chosen state . . . and which . . . would be the state of the applicable law in the absence of an effective choice of law," Flores v. Am. Seafoods Co., 335 F.3d 904, 917 (9th Cir. 2003) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1991)).

879 F.3d at 1059 (alterations in Galilea).

In the instant case, the "Common Policy Conditions" section states: "This Insurance shall be governed by the laws of the United States of America and subject to the exclusive jurisdiction of the courts of the United States of America." [Marine Policy at 27, ¶ 4.] However, the parties have not identified any judicially established admiralty case law governing the issues presented in the instant Motion. Where there is no judicially established admiralty case law regarding a particular issue, Hawai`i state case law will be applied, in spite of the parties' choice-of-law provision. In the absence of established federal admiralty case law, Hawai`i has a "materially greater interest" in seeing its laws applied to the insurance disputes in this case, which address whether Hawai`i entities have insurance coverage for claims brought against them by an injured Hawai`i resident. See Galilea, 879 F.3d at 1059; Underlying Complaint at ¶¶ 2-3, 6-8 (citizenship allegations).

The Court now turns to the application of the Marine Policy's provisions to the claims in the Underlying Action.

## II.  Coverage A and Watercraft Exclusion A

It is undisputed that the claims in the Underlying Complaint are based upon bodily injuries that Kalei-Imaizumi suffered at some point after she re-entered the water from the Ohana to retrieve Stevens's hat. See id. at 22, § V.3 (stating "'[b]odily injury' means bodily injury, sickness or disease

21

sustained by a person"); see also, e.g., Underlying Complaint at ¶¶ 26, 28 (alleging Kalei-Imaizumi "was grievously injured by the unguarded propeller of one of the outboard motors," which "caused the complete avulsion of [her] left femoral artery, lacerations to her left femoral vein and extensive muscle and soft tissue damage to her pelvic and vaginal area extending to the buttocks"). There is no evidence in the instant case suggesting Kalei-Imaizumi incurred her injuries in a different manner. The Underlying Action is a "suit" seeking damages arising from those injuries. See Marine Policy at 25, § V.20 ("'Suit' means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged."). Thus, the claims in the Underlying Action fall within Coverage A, unless a Coverage A exclusion applies. See id. at 6, § 1.a.

A. **Extrinsic Evidence**

The Club Defendants urge the consideration of extrinsic evidence in the determination of whether Watercraft Exclusion A applies. They offer: the declaration of Renee Birgado, a Servco Pacific Insurance ("Servco") Senior Account Manager who managed HCRA's account;[10] [Opp. CSOF, Decl. of Renee

_____

[10] Servco is the "Producer" of the Marine Policy. [Marine Policy at 1.]

22

Birgado ("Birgado Decl.") at ¶ 1;] and an email exchange between

Ms. Birgado and Peter Sandler, the Crum & Forester Underwriting

Manager, Ocean Marine,[11] [Birgado Decl., Exh. A (email string

between Mr. Sandler and Ms. Birgado, dated from 11/11/16 to

12/12/16) at 2]. US Fire asserts these materials cannot be

considered under the parol evidence rule.

The parol evidence rule, which prohibits the

consideration of extrinsic evidence in the interpretation of an

integrated contract, applies in admiralty actions. <u>Richfield</u>

<u>Oil Corp. v. United States</u>, 248 F.2d 217, 223–24 (9th Cir.

1957). "'An agreement is integrated where the parties thereto

adopt a writing or writings as the final and complete expression

of the agreement.'" <u>Id.</u> at 223 n.3 (quoting Restatement of

Contracts § 228). The Marine Policy does not contain an express

integration clause. However, the policy's language indicates

that the parties intended it to be a final and complete

agreement. <u>See</u> Marine Policy at 1 (stating "[t]his policy

consists of the following coverage parts" and the "Forms and

Endorsements made part of this policy at the time of issue are

indicated in the Forms Schedule"). Further, even if the Marine

Policy is not an integrated agreement, the extrinsic evidence

---

[11] US Fire is a Crum & Forester company. [Marine Policy at 2.]

would not be considered because it addresses a period after the Marine Policy was already in force and after the incident at issue in the Underlying Action occurred.  It does not address the parties' intentions at the time they entered into the version of the Marine Policy that is at issue in this case. Because the extrinsic evidence is not relevant, this Court would decline to consider it, even if the parol evidence rule did not apply.

**B.    The Exclusion**

US Fire argues Watercraft Exclusion A applies because Kalei-Imaizumi suffered bodily injuries that arose out of the use of the Ohana, a watercraft.  See, e.g., Mem. in Supp. of Motion at 16.[12]  Watercraft Exclusion A also requires that the watercraft was either owned by, operated by, rented to, loaned to, or chartered to an insured.  [Marine Policy at 8, § 2.f.]

This Court has found, for purposes of the instant Motion, that an insured under the Marine Policy contracted with Stevens to secure his operation of the Ohana as an escort boat in the 2016 Pailolo Challenge.  See supra Discussion § I.A.3. Thus, the Ohana was rented to an insured, and the only remaining

---

[12] US Fire does not rely upon the ownership, maintenance, or entrustment of the Ohana.

issue is whether Kalei-Imaizumi's injuries arose out of the use of the Ohana.[13]

Watercraft Exclusion A expressly states operating a watercraft, as well as "'loading or unloading'" a watercraft, are types of uses.  [Marine Policy at 8, § 2.f.]  "Loading or unloading" is defined as "the handling of property" under certain circumstances, [id. at 24, § V.13,] and therefore cannot refer to individuals boarding and disembarking from the watercraft.  Kalei-Imaizumi's re-boarding of the Ohana does not constitute "loading or unloading."  According to the Underlying Complaint, Kalei-Imaizumi was injured when "the Ohana reversed and the unguarded propeller of one of the outboard motors struck" her.  [Underlying Complaint at ¶ 25 (emphasis in original).]  No evidence in the record of this coverage action contradicts this statement.  Thus, there is no genuine issue of fact, and this Court finds that, for purposes of the instant Motion, Kalei-Imaizumi's injuries arose from the operation of the Ohana.

Because the Underlying Action asserts claims arising from Kalei-Imaizumi's bodily injuries, which arose out of the

---

[13] Because the fact that the Ohana was rented to an insured is sufficient for purposes of Coverage A and Watercraft Exclusion A, it is not necessary, at this point, to consider the issue of whether the Ohana was chartered by an insured.

use of a watercraft that had been rented to an insured,
Watercraft Exclusion A precludes application of the Marine
Policy's Coverage A to the claims against the insureds, unless
one of the relevant exceptions to Watercraft Exclusion A
applies.  See Marine Policy at 8, § 2.f(3).

## III.  **Coverage D and Watercraft Exclusion D**

The first exception in § 2.f(3) is when the claims
against the insured fall within the scope of Coverage D.
US Fire acknowledges that the injuries at issue the Underlying
Action were arguably "caused by Mr. Stevens' performance of
escort boat services on behalf of KCC while the canoe club's
paddlers were aboard the *Ohana*."  [Mem. in Supp. of Motion at
19-20 (emphasis in original).]  This acknowledgement is
construed as an admission, for purposes of the instant Motion,
that the claims in the Underlying Action fall within the scope
of Coverage D, unless one of the exclusions apply.[14]  See Marine
Policy at 12, § 1.a(3) (relevant provision of Coverage D's
Insuring Agreement).

---

[14] Coverage D § 2.a excludes coverage for "'[b]odily injury'
. . . excluded under Coverage A., part 2. – Exclusions."
[Marine Policy at 13.]  This suggests that any claims excluded
by, *inter alia*, Watercraft Exclusion A would also be excluded,
even if the claims would otherwise fall within the scope of
Coverage D.  However, the Charterer Endorsement deletes
Coverage D § 2.a, to the extent an insured is a charterer.  [Id.
at 36.]  Because the Court finds that an insured was a charterer
of the Ohana, see *infra*, Coverage D § 2.a does not apply here.

For the reasons set forth as to Watercraft Exclusion A, this Court also finds that, for purposes of Watercraft Exclusion D, the Underlying Action seeks damages incurred as a result of bodily injury that arose out of the operation of a watercraft. See id. at 13, § 2.e. However, Watercraft Exclusion D also requires that the watercraft be owned by or chartered to an insured.

It is undisputed that Stevens owns the Ohana. [Motion CSOF at ¶ 7; Opp. CSOF at ¶ 7 (partially disputing US Fire's ¶ 7 on other grounds).] The issue of whether Stevens is an insured under the Marine Policy was addressed in the 3/22/19 Motion, but US Fire did not carry its burden as to that issue. See EO, filed 6/24/19 (dkt. no. 96) (informing the parties of the Court's rulings on the 3/22/19 Motion and directing the parties to file supplemental briefing). The issue therefore will not be addressed here, and the analysis of Watercraft Exclusion D will focus upon the issue of whether the Ohana was chartered to an insured.

Section V – Definitions, which applies to Coverage D, does not contain a definition of "charter" or "charterer." See Marine Policy at 22-26. The Charterer Endorsement states: "For the purposes of this endorsement, 'Charterer' means one who hires, rents or leases watercraft or space on watercraft for their exclusive and temporary use." [Marine Policy at 36, § 1.]

27

The "[f]or the purposes of this endorsement" language,

considered in isolation, could arguably render the definition

inapplicable to all other parts of the Marine Policy.  However,

the Charterer Endorsement also states:

> Exclusion 2.a. of Section I, Coverage D is
> deleted, but only to the extent of coverage
> provided to you as as [sic] a "charterer."
>
> The following endorsement to coverage is provided
> in accordance with provisions 2.f.(3) and
> (exception in) 2.h. of Section I of the attached
> Marine General Liability Coverage Part and is
> subject in all respects to the terms, conditions
> and exclusions contained in the Marine General
> Liability Coverage Part, Common Policy Conditions
> and Common Policy Exclusions of this policy
> unless otherwise specifically provided herein.

[Id. at 36.]  These provisions suggest that Coverage D and the

Charterer Endorsement should, if possible, be interpreted

consistently with each other.  Further, under Hawai`i law,[15]

> insurance policies are subject to the general
> rules of contract construction; the terms of the
> policy should be interpreted according to their
> plain, ordinary, and accepted sense in common
> speech unless it appears from the policy that a
> different meaning is intended.  Moreover, every
> insurance contract shall be construed according
> to the entirety of its terms and conditions as
> set forth in the policy.

---

[15] Hawai`i law applies to the interpretation of the term
"charterer" in the Marine Policy "because there is no general
federal rule governing how the language in marine insurance
contracts is to be construed."  See Yu v. Albany Ins. Co., 281
F.3d 803, 807 n.3 (9th Cir. 2002) (citation omitted).

<u>Guajardo v. AIG Hawai`i Ins. Co.</u>, 118 Hawai`i 196, 202, 187 P.3d 580, 586 (2008).  Construing the Marine Policy in its entirety and based on the policy provision quoted *supra*, the Charterer Endorsement's definition of "charterer" also applies to the term in Coverage D.

Either KCC or Bellafiore, each an insured, hired or rented the Ohana, a watercraft, to be an escort boat for the 2016 Pailolo Challenge, *i.e.* for temporary use.  <u>See</u> *supra* Discussion § I.A.3.  There is no evidence in the record suggesting that any other person or entity had use of the Ohana while it served as an escort boat.  Thus, the charterer of the Ohana had exclusive use of it during the challenge.  Even viewing the record in the light most favorable to Defendants, there are no genuine issues of material fact, and the Court finds that, for purposes of the instant Motion, an insured was a charterer of the Ohana.  Because the Underlying Action seeks damages incurred as a result of bodily injury arising out of the operation of a watercraft that was chartered to an insured, Watercraft Exclusion D applies and precludes coverage under Coverage D of the Marine Policy for the claims in the Underlying Action.

## IV.  <u>P&I Endorsement</u>

The second exception in Coverage A § 2.f(3) is when the claims against the insured fall within the scope of the P&I

Endorsement.  [Marine Policy at 8.]  The P&I Endorsement covers
an insured's liability for "'bodily injury' to any person" -
with exceptions that are inapplicable to Kalei-Imaizumi - as
well as reasonable expenses that result because of the injury.
[Id. at 32, § A(1)-(2).]  As previously noted, Kalei-Imaizumi
suffered bodily injuries in the incident.  However, the coverage
provided by the P&I Endorsement is limited to the vessels that
are either described in § E or listed on the Schedule of Vessels
Applying to this Endorsement ("P&I Schedule").  [Id. at 34-35.]

        The Ohana is not listed on the P&I Schedule, which
only lists "Canoes."  [Id. at 35.]  Vessels that are not listed
on the P&I Schedule will only be covered under the P&I
Endorsement if the vessel meets all of the requirements in § E.
[Id. at 34.]  The first requirement is met because an insured
chartered the Ohana during the Marine Policy's policy period.
See supra Discussion § III.  However, because Stevens operated
the Ohana and the charterer of the Ohana was not "directly
responsible for the management and operation of the" Ohana, the
charter agreement was not "a 'bareboat or demise charter.'"  See
Marine Policy at 32, § E(a).  Further, the Ohana is a twenty-
six-foot, motorized vessel, [Motion CSOF at ¶ 8; Opp. CSOF at
¶ 8,] which is not "similar size and type" as the canoes listed
in the P&I Schedule, [Marine Policy at 32, § E(b)].  Finally,
there is no evidence in the record that: the charterer of the

Ohana notified US Fire about the charter within thirty days after entering into the charter agreement; or any required additional premium was paid to insure the Ohana during the 2016 Pailolo Challenge. See id. at 32, § E(c)-(d). Even construing the record in the light most favorable to Defendants, there is no genuine issue of material fact, and the Ohana does not meet the requirements in § E of the P&I Endorsement.

Because the Ohana neither meets the requirements in § E of the P&I Endorsement nor is listed in the P&I Schedule, the P&I Endorsement does not provide coverage for the claims in the Underlying Action.

## V.    **Charterer Endorsement**

The final exception in Coverage A § 2.f(3) is when the claims against the insured fall within the scope of the Charterer Endorsement. [Marine Policy at 8.] The Charterer Endorsement provides coverage for "all sums the insured . . . become[s] legally obligated to pay as a 'charterer' for . . . liabilities imposed upon [the insured] as such charterer by law for 'bodily injury.'" [Id. at 36, § 1(a)(ii).] This Court has found that KCC and/or Bellafiore was a charterer, under the definition in the Charterer Endorsement.[16] See *supra* Discussion

---

[16] The Charterer Endorsement would not provide coverage for HCRA, HCC, Stevens, or any other insured that was not the charterer of the Ohana.

(. . . continued)

§ III.  Further, the Underlying Action seeks to impose liability on the charterer of the Ohana for Kalei-Imaizumi's bodily injuries.  Thus, the Charterer Endorsement would provide coverage to the insurer(s) of the Ohana for the claims alleged in the Underlying Action, if the Ohana is one of the covered watercraft and none of the exclusions apply.

There is no watercraft described in the Watercraft Covered section of the Charterer Endorsement.  [Marine Policy at 36, § 2.]  Because the Ohana is not described in that section, the Charterer Endorsement does not apply.  Further, even if the Ohana was a covered watercraft, US Fire contends Exclusion § 3(x), which excludes coverage for the charterer's liability "[f]or 'bodily injury' to passengers carried," applies.  <u>See</u> <u>id.</u> at 37.  The Club Defendants argue there is a genuine issue of material fact as to whether Kalei-Imaizumi was a passenger because she could have been swimming in the open ocean when she was injured.

The term "passenger" is not defined in the Charterer Endorsement or elsewhere in the Marine Policy.  The parties have not identified, nor is this Court aware of, any controlling admiralty case law addressing the meaning of the term "passenger" in the context of a marine insurance policy.

Hawai`i law therefore applies, and the term "passenger" will be interpreted "according to [its] plain, ordinary, and accepted sense in common speech." See Guajardo, 118 Hawai`i at 202, 187 P.3d at 586. Webster's Third New International Dictionary defines "passenger" as, *inter alia*:

> 1: one who passes by: TRAVELER, WAYFARER . . . 2
> a: a traveler in a public conveyance (as a train,
> bus, airplane, or ship) . . . b: one who is
> carried in a private conveyance (as an
> automobile) for compensation or expected benefit
> to the owner . . . c: a rider in an
> automobile . . . .

Passenger, Webster's Third New International Dictionary 1650 (Philip Babcock Gove, Ph.D., ed. 2002). Kalei-Imaizumi was to be carried on the Ohana, which was acting as a private conveyance, to the point where she and the other switch crew members were to board their team's canoe. Kalei-Imaizumi did not compensate either Stevens, the owner of the Ohana, or the charterer(s) of the Ohana, but both expected to benefit from the conveyance. Stevens was to receive $900.00 to operate the Ohana as an escort boat, and KCC/Bellafiore were able to have a paddling team participate in the 2016 Pailolo Challenge. Thus, it is clear that Kalei-Imaizumi was a passenger while she was aboard the Ohana.

Even if there is a genuine dispute of fact as to whether Kalei-Imaizumi was in the act of swimming in the ocean or in the act of re-boarding the Ohana when she was injured, the

dispute is not a material one. It is undisputed that Kalei-Imaizumi boarded the Ohana to be conveyed to the switch point. Although she re-entered the water, she only did so temporarily to retrieve Stevens's hat; she intended to re-board the Ohana and continue to the switch point. Even viewing the record in the light most favorable to Defendants, there is no genuine issue of material fact as to Kalei-Imaizumi's status while she was in the water in connection with the retrieval of the hat. Regardless of whether she was swimming or re-boarding when she was injured, Kalei-Imaizumi was still a passenger of the Ohana at that time. Because the claims in the Underlying Action seek damages arising from bodily injuries to a passenger who was carried by the Ohana, Exclusion § 3(x) to the Charterer Endorsement applies.

It is therefore concluded that the Charterer Endorsement does not provide coverage for the claims in the Underlying Action against the charterer of the Ohana, either because the Ohana is not identified as a covered vessel or because of the passenger exclusion.

## VI.  Summary

Watercraft Exclusion A and Watercraft Exclusion D preclude coverage for the insureds under Coverage A and Coverage D of the Marine Policy for the insureds' liability for claims in the Underlying Action. Further, the P&I Endorsement

does not provide coverage for those claims.  Although KCC and/or

Bellafiore chartered the Ohana for the 2016 Pailolo Challenge,

the Charterer Endorsement does not provide coverage to the

charterer(s) for the claims in the Underlying Action.  No

provision besides Coverage A, Coverage D, the P&I Endorsement,

and the Charterer Endorsement has been identified as potentially

providing coverage to the insureds for the claims in the

Underlying Action.  Because none of those provisions applies,

the claims against the insureds in the Underlying Action are not

covered under the Marine Policy.[17]  Because the claims are not

covered, it is not necessary to address whether any punitive

damages awarded to the Underlying Plaintiffs would be covered

under the Marine Policy.  This Court concludes that, as a matter

of law, US Fire does not have a duty to defend, nor a duty to

indemnify, Defendants or any other insured in the Underlying

Action.

---

[17] To the extent that Hawai`i law regarding the scope of the
duty to defend and the duty to indemnify applies to the Marine
Policy, this Court concludes that there is no possibility that
coverage under the Marine Policy exists.  See Tri-S Corp. v. W.
World Ins. Co., 110 Hawai`i 473, 488, 135 P.3d 82, 97 (2006).
In conducting the analysis in the instant Order, "[a]ll doubts
as to whether a duty to defend exists [have been] resolved
against the insurer and in favor of the insured."  See id.

## CONCLUSION

On the basis of the foregoing, US Fire's Motion for Summary Judgment, filed on July 3, 2019, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as summary judgment is granted in favor of US Fire because it has no duty to defend, nor a duty to indemnify, the insureds in the Underlying Action. The portion of the Motion addressing any potential award of punitive damages in the Underlying Action is DENIED AS MOOT.

Because summary judgment has been granted in favor of US Fire as to the duty to defend and the duty to indemnify, US Fire's Motion for Summary Judgment, filed March 22, 2019, is HEREBY DENIED AS MOOT.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, November 27, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

UNITED STATES FIRE INSURANCE COMPANY VS. HAWAIIAN CANOE RACING ASSOCIATION, ET AL; CV 18-00212 LEK-WRP; ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, FILED JULY 3, 2019; AND DENYING AS MOOT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, FILED MARCH 22, 2019